UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **NOI COURVILLE ET AL** | **CASE NO. 2:20-CV-01415** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CITGO PETROLEUM CORP ET AL** | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 76] filed by Citgo Petroleum Corporation ("Citgo"). Plaintiffs Mark J. Courville, Noi Courville, and Ashley Trahan (Collectively, "Plaintiffs") filed an Opposition [Doc. No. 78]. Citgo filed a Reply to the Opposition [Doc. No. 79].

For the following reasons, the Motion is **GRANTED**.

### I.   BACKGROUND AND PROCEDURAL HISTORY

On November 2, 2020, Noi Courville, the surviving spouse of Mark W. Courville ("Courville"), deceased, and Mark J. Courville and Ashley Trahan, surviving children of decedent, filed suit in this Court for a wrongful death and survival action against Citgo and CNH Industrial America, LLC ("CNH"). In their Complaint, Plaintiffs assert that Defendant Citgo is liable to them under the Louisiana Premises Liability, and that Defendant CNH is liable to them under the Louisiana Products Liability Act.[1] In its First Defense, Citgo asserts that all of Plaintiffs' claims against Citgo are precluded by the exclusivity provisions in the Louisiana Worker's Compensation Act ("LWCA") because it qualifies as Courville's "statutory employer."[2]

---

[1] [Doc. Nos. 1 (Complaint), 16 (Amended Complaint)]
[2] [Doc. No. 20, Answer to Amended Complaint, p. 10]

The events leading up to the suit are as follows. Courville was killed in a workplace accident when he was struck by a forklift operated by an employee of Turner Industries Group, LLC ("Turner") on March 9, 2020.[3] The accident occurred while Courville was walking towards the break area on his lunch break.[4] At the time, Courville was employed by Turner.[5] These events form the basis of the wrongful death actions brought by Plaintiffs.

Citgo was the owner and operator of the refinery where the subject accident took place.[6] Citgo's ownership of the refinery forms the basis for Plaintiffs' Premises Liability claim. All of Courville's medical and funeral expenses were covered by worker's compensation by Turner, and Courville's surviving spouse is still receiving weekly worker's compensation benefits from Turner.[7]

The refinery owned and operated by Citgo refines various products including gasolines, diesel, propylene, coke, and sulfur.[8] The refining process involves various pressure vessels and pressure relieving devices that are critical and essential to the process.[9] Citgo's waste water, alkylation, and acid treatment area ("WAAT area") is used to convert mixtures such as propene and butene into a high octane gasoline component.[10] Courville's job responsibilities at the refinery included planning and executing vessel inspection work, primarily in the WAAT area.[11] These vessel inspections are mandatory, code-driven inspections that must be performed on a regularly

---

[3] [Doc. No. 16, ¶ 23]
[4] [Id. at ¶ 18]
[5] [Id. at ¶ 13]
[6] [Id. at ¶ 15]
[7] [Doc. No. 76-6, p. 1]
[8] [Doc. No. 76-2]
[9] [Id.]
[10] [Id.]
[11] [Id.]

scheduled basis. On the date of the accident, Courville was in the process of planning an inspection of one of the vessels.[12]

Citgo and Turner entered a work contract ("the Contract") in May of 2013.[13] The Contract incorporated several provisions referencing Citgo's status as a statutory employer.[14] Plaintiffs filed a Motion for Summary Judgment[15] arguing that Citgo should be barred as a matter of law from claiming statutory employer status because of certain provisions[16] in the Contract. The Court denied the Motion.[17]

Citgo filed the instant Motion on October 19, 2022, requesting that the Court dismiss Plaintiffs' claims against Citgo with prejudice.[18] Citgo argues that it was Courville's statutory employer and is therefore immune from suit in tort.[19]

Plaintiffs maintain their position that the Contract between Citgo and Turner contains improper provisions and thus cannot create a statutory employer-employee relationship between Citgo and Courville.[20] In the alternative, Plaintiffs argue that the work Courville was performing at the time of the accident was not an integral part of or essential to Citgo's ability to generate its goods, products, or services.[21]

The issues are briefed, and the Court is prepared to issue a ruling.

---

[12] [Id.]
[13] [Doc. No. 53-2, p. 7]
[14] [Id, p. 32-33, 45, 147]
[15] [Doc. No. 48]
[16] *See* [Doc. No. 71, pp. 2-3]
[17] [Id.]
[18] [Doc. No. 76, p. 1]
[19] [Doc. No. 76-1, p. 1]
[20] [Doc. No. 78, p. 1]
[21] [Id. at pp. 1-2]

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted).; *see also* Fed. R. Civ. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248). However, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-

4

serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

Note that "a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial." *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991); *see also Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978) ("If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved . . . . The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.").

### B.  Analysis

Citgo argues that, because Plaintiff was injured in the course and scope of his employment, his exclusive remedy is worker's compensation. Citgo argues further that it is Plaintiff's statutory employer, and the exclusivity provisions of Louisiana's worker's compensation scheme extends to statutory employers, thus barring it from any liability in tort. Plaintiff argues in response that Citgo failed to prove that the Contract from which Citgo claims statutory employer status was in effect at the time of the accident, and, in the alternative, that Citgo failed to identify the relevant provisions of the Contract, which creates Citgo's purported statutory employer status. Additionally, Plaintiff reasserts his argument that Citgo is barred from claiming statutory employer status because of "escape hatches" in the Contract and that Plaintiff was not performing integral/essential work at the time of the accident because he was on his lunch break.

The Court will first address the statutory employer doctrine under the Louisiana Worker's Compensation Act ("LWCA"), and then it will address the parties' arguments.

**1. Statutory Employer Status under the LWCA**

The LWCA grants tort immunity to statutory employers. The doctrine of statutory employer is codified in La. R.S. 23:1061. Under La. R.S. 23:1061(A)(1):

> [W]hen any "principal"…, undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person,…for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032[.] For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

La. R.S. 23:1061(A)(1). When a valid written contract recognizes the existence of a statutory employer relationship, there is a rebuttable presumption of a statutory relationship between the principal and a contractor's employees. La. R.S. 23:1061(A)(3). In 1997, the LWCA was amended to provide that when a valid written contract recognizes the existence of a statutory employer relationship:

> there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees that can only be overcome by showing the work performed is not an integral part of or essential to the ability of the principal to generate that principal's good, products, or services.

La. R.S. 23:1061(A)(3).

Under Louisiana law, a survival action and/or wrongful death claim related to an injury for which workers' compensation is recoverable is barred by the workers' compensation claim. *See* La. R.S. 23: 1032(A)(1)(a) ("[e]xcept for intentional acts ... the rights and remedies herein granted to an employee or his dependent on account of an injury ... shall be exclusive of all other rights, remedies, and claims for damages.") Therefore, if Citgo is found to be Courville's statutory

employer, Plaintiffs' claims are barred by the statutory employer immunity provisions of the LWCA.

### a. The Modifications to the Contract

Plaintiff reasserts its argument that the Contract between Citgo and Plaintiff's employer contains "escape hatches" that bar Citgo from claiming statutory employer status. The Court finds no reason to reconsider its prior ruling on this point. Nonetheless, the Court finds it prudent to reassert that Exhibit F[22] is an improper attempt to escape liability. As noted in the Court's prior Ruling,[23] however, the proper remedy in the event that Citgo attempts to enforce Exhibit F at some point in the future would be "to simply find the offending provision(s) unenforceable vis-a-vis Plaintiffs, rather than also invalidating the otherwise unambiguous and lawful terms of [the rest of the contract]." *McClain v. Motiva Enterprises, L.L.C.*, No. CIV.A. 09-5806, 2010 WL 3614310, at *3 (E.D. La. Sept. 8, 2010); *See also Berthelot v. Murphy Oil, Inc.*, No. CIV.A. 09-4460, 2010 WL 103871 (E.D. La. Jan. 7, 2010).

### b. The Contract was in Effect on the Date of the Accident

Plaintiff argues that Citgo has failed to show that the Contract was in effect on the date of the accident because the Contract does not contain an "Effective Date" and instead contains blanks for the commencement and end of the Contract.[24] In support, Plaintiff cites to *Tilley v. Boise Cascade Corp.*, 2009-1072 (La. App. 3 Cir. 3/10/10), 32 So. 3d 1130, *writ denied*, 2010-0767 (La. 6/9/10), 38 So. 3d 310. Citgo argues in response that the Contract was accepted and agreed to by Turner on May 9, 2013, and by Citgo on May 21, 2013.[25] Further, Citgo points out that:

---

[22] Exhibit F states that "[Citgo] is to be granted the exclusive remedy protection under the applicable Workers Compensation laws as applicable and it shall not be liable to pay compensation benefits if the immediate employer, [Turner] or its subcontractors as applicable, is unable to meet their obligation under the Worker's Compensation Statute for Work or service that is performed under this Agreement[.]" [Doc. No. 53-2, p. 147]
[23] [Doc. No. 71]
[24] [Doc. No. 78, *citing* Doc. No. 53-2 p. 2]
[25] [Doc. No. 79, *citing* Doc. No. 48-1 p. 7]

7

> The change orders to the contract agreed to by CITGO and Turner clearly confirm and acknowledge that the CITGO/Turner Industries contract no. 4600010139 remained in effect throughout 2020, when a May 28 change order to that contract was signed, extending the end date of the contract to December 31, 2020. Through that change order, the parties specifically agreed that all other terms and requirements of the original Contract "shall remain in full force and effect."[26]

The Court agrees with Citgo that there is sufficient evidence to show that the Contract was in effect on the date of the accident. Specifically, various change order forms[27] identified the subject Contract (contract number 4600010139) and extended it (or in some cases modified it) well beyond the date of the accident. The change orders date from June 3, 2013, to September 11, 2020, and all reference contract number 4600010139.

Additionally, the instant case is distinguishable from *Tilley*. In *Tilley*, the terms of the contract provided that the contract expired on June 2, 2007, and the subject incident occurred on June 8, 2007. *Id*. at 1133. The only evidence to support an extension of the *Tilley* contract was an affidavit from a party who was not a signatory to the contract attesting that the contract was in effect on the date of the accident and an addendum signed but not dated by the vice president of a party to the contract. *Id*. Here, each change order was signed and dated by the proper parties and show that the Contract was extended to well beyond the date of the subject accident. Therefore, the Court finds that there is sufficient evidence to show that the Contract was in effect on the date of the accident.

---

[26] [Id.]
[27] [Doc. No. 53-2, pp. 334-35, 361-62, 384-85, 386-87, 388-89, and 390-91]

### c. The Statutory Employer Provisions are Valid and were in Effect on the Date of the Accident

Plaintiff also argues that Citgo failed to "prove that the invalidated provision does not apply here and that only the validated ones do."[28] The Court does not find this argument persuasive. The Contract contains provisions identifying Citgo as statutory employer.[29] For example, the Contract contains a provision which states:

> Notwithstanding anything to the contrary herein, in all cases where Contractor's employees (defined to include contractor's direct, borrowed, special or statutory employees) are covered by the Louisiana Worker's Compensation Act, La. R.S. 23:1021 et seq, Company and Contractor agree that all work and operations performed by Contractor and its employees pursuant to the Contract are an integral part of and are essential to the ability of Company to generate Company's goods, products and services for purposes of La R.S. 23:1061(A)(1). Furthermore, Company and Contractor agree that Company is the statutory employer of Contractor' employees for the purposes of La. R.S. 23:1061(A)(3). Irrespective of Company's status as the statutory employer or special employer (as defined in La. R.S. 23:1061(c)) of Contractor's employees, Contractor Page 25 Contract #4600010139, Exhibit A-5, Rev 0, 5/7/2013 shall remain primarily responsible for the payment of Louisiana workers' compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from Company.[30]

As stated above, when a valid written contract recognizes the existence of a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship. La. R.S. 23:1061(A)(3). The above quoted language recognizes the existence of a statutory employer relationship and is valid[31]. Plaintiffs have failed to show any material facts in dispute that would

---

[28] [Doc. No. 78]
[29] [*See* Doc. No. 53-2, pp. 32-33, 45]
[30] [Id. at pp. 32-33]
[31] As the Court has noted in its previous Ruling [Doc. No. 71], parties are free to delegate rights such as indemnity or contribution as between themselves. *See Rodney v. Williams Olefins, L.L.C.*, No. CV 14-368-SDD-SCR, 2015 WL 5304110, at *3 (M.D. La. Sept. 8, 2015) ("[T]he *Prejean* court expressly stated that none of its discussion precluded 'either the statutory employer or the direct employer from contracting as between themselves rights of contribution or indemnification.'") (citations omitted); *See also Stewart v. Boh Bros. Const. Co.*, 13-193 (La. App. 5 Cir. 10/9/13), 128 So. 3d 398, 403 ("The quoted language comprises a regulation of the rights and obligations as

cast doubt on the validity of the Contract, thus the question becomes one of law. Accordingly, the Court finds that the Contract is valid, and it recognizes the existence of a statutory employer relationship, which creates a rebuttable presumption of a statutory employer relationship that can only be overcome by showing that the work performed is not an integral part of or essential to the ability of Citgo to generate its goods, products, or services. *See* La. R.S. 23:1061(A)(3).

### d. Plaintiff's Work was an Integral Part of Citgo's Ability to Generate its Goods, Products, or Services

Plaintiffs argues that Courville was not performing integral, essential work at the time of the accident because Courville was on a lunch break. In support of this argument, Plaintiffs cite to *Spears v. Exxon Mobil Corp. & Turner Indus. Grp., L.L.C.*, 2019-0309 (La. App. 1 Cir. 12/17/19), 291 So. 3d 1087, 1095. Citgo argues in response that courts look at the nature of the work undertaken by the contractor for the principal and have not focused on the specific, discrete task being performed by the plaintiff. In support, Citgo cites to several cases.[32] The Court agrees with Citgo on this point.

Courts do not focus on the singular task an employee was engaged in when a workplace injury occurred. In *Taylor v. CITGO Petroleum Corp.*, a worker was injured when he stepped in a hole on a worksite and fell. 2012 WL 3707480, at *4. The worker filed suit against the Citgo as the owner of the yard for negligent care, maintenance, monitoring, and notification of a potentially hazardous condition on its premises. *Id.* at 1. Citgo moved for summary judgment on the grounds

---

between [the principal] and [the contractor] only, which case law, including *Prejean*, recognizes as permissible.") *See also Conner v. Kraemer-Shows Oilfield Servs., LLC*, No. CIV.A. 11-2206, 2013 WL 2644522, at *4 (W.D. La. June 11, 2013) (Where the court upheld a provision that "merely [allocated] workers' compensation liability as between [the principal] and [the contractor].").

[32] Citgo cites to: *Applegarth v. Transamerican Ref. Corp.*, 00-1547 (La. App. 5 Cir. 2/28/01), 781 So. 2d 804, *writ denied*, 2001-0834 (La. 5/11/01), 792 So. 2d 738; *English v. Apache Corp.*, CIV.A. 10-4419, 2011 WL 3352011 (E.D.La. Aug. 3, 2011); *Taylor v. CITGO Petroleum Corp.*, No. 2:11 CV 1292, 2012 WL 3707480 (W.D. La. Aug. 24, 2012); and *Hester v. Int'l Paper Co*, No. CIV.A. 06-1333, 2007 WL 1308393 (W.D. La. May 3, 2007).

that the worker was a statutory employee of Citgo and therefore not entitled to tort remedy. *Id*. Notably, the accident in *Taylor* occurred at the same refinery involved in the instant case, and Citgo relied on the same contractual provision to support its statutory employer argument. The court granted summary judgment in favor of Citgo.

The court in *Taylor* rejected worker's argument that the work he performed was not integral or essential to Citgo's trade, business, or occupation because he was walking and not engaged in repair of a catalytic cracker. In rejecting this argument, the court stated:

> It is irrelevant what specific task Taylor was engaged in for the analysis as long as the task is undertaken to advance Taylor's primary employment responsibility. *Applegarth v. Transamerican Ref. Corp.,* 00–1547 (La.App. 5 Cir. 2/28/01, 781) So.2d 804. Courts have consistently held that the work that a "contractor" undertakes to perform for the "primary" function of his employment is also considered to be within the scope of his employment. *Id.* In *Applegarth,* the court affirmed that an injury sustained during a bus ride en route to a job site occurred in the course of the plaintiff's employment. *Id.* Additionally in *English, v. Apache Corp.,* CIV.A. 10–4419, 2011 WL 3354011 (E.D.La. Aug. 2, 2011), the court rejected the argument that the plaintiff was outside of the scope of his employment when he was injured while walking to a pre-job safety meeting. Thus, courts refuse to focus on the singular task that the employee was engaged in but rather focus on the totality of the circumstances. Therefore, we cannot focus on the single isolate fact that Taylor was simply "walking."

*Id*. at 4. The court granted summary judgment in favor of Citgo.

Here, Courville was killed while he was walking towards the break area on his lunch break.[33] Courville was employed to inspect vessels in the WAAT area of Citgo's refinery, and, on the day of the accident, was in the process of preparing and conducting a mandatory inspection of one of Citgo's F-11 drum vessels.[34] The F-11 drum is a vessel located in the treating plant in the

---

[33] [Doc. No. 16, ¶ 18]
[34] [Doc. No. 76-2]

11

WAAT area and is used to separate critical components in the gasoline manufacturing process.[35] The Court finds that the nature of Courville's work –inspecting vessels in the WAAT area of Citgo's refinery– is an integral part of Citgo's ability to generate its goods, products, or services.

The Court also finds that Courville was killed in the course and scope of his employment. Because Courville was killed in the course and scope of his employment, the medical and funeral expenses relating to this accident were covered by worker's compensation, and Courville's widow has received and continues to receive weekly worker's compensation death benefits.[36] Workers' compensation coverage was properly implicated, provided, and accepted. Therefore, workers' compensation immunity extends to Turner, and to Citgo, pursuant to the valid and applicable statutory employer provisions in the Contract between Citgo and Turner.

Additionally, the case cited by Plaintiffs supports the Court's conclusion. While the court in *Spears* did state that the plaintiff had to present evidence proving that the work he was performing at the time of the accident was not an integral part of or essential to his employer's ability to generate its goods, products, or services, the court also noted that the "employer's motivation for undertaking the contracted work does not make the work any less essential to the principal's ability to generate its goods, products, or services. The focus of the inquiry is the work itself, not the contractor's reasons for performing the work." *Spears*, 291 So. 3d at 1096. The *Spears* court ultimately granted summary judgment in favor of the employer finding that the employee had failed to rebut the presumption of a statutory employer relationship. *Id*. The decision in *Spears* is another example of courts refusing to break down every statutory employer relationship into smaller and smaller individual components.

---

[35] [Id.]
[36] [Doc. No. 67]

### III.   CONCLUSION

For the reasons set forth herein, **IT IS ORDERED, ADJUDGED, AND DECREED** that the Motion for Summary Judgment [Doc. No. 76] filed by Citgo Petroleum Corporation ("Citgo") is hereby **GRANTED**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Plaintiffs' claims against Citgo in the Amended Complaint [Doc. No. 16] are hereby **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 2nd day of December, 2022.

_____
Terry A. Doughty
United States District Judge