UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **NOI COURVILLE, ET AL.** | **CASE NO. 2:20-CV-01415** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CITGO PETROLEUM CORP., ET AL.** | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 82] filed by Defendant, Contract Industrial Tooling, Inc. ("CIT"), who moves to dismiss all claims made against it by Plaintiffs, Noi Courville, Mark J. Courville, and Ashley Trahan ("Plaintiffs"), pursuant to Federal Rule of Civil Procedure 56. Plaintiffs filed an opposition to the motion [Doc. No. 92], and CIT filed a reply [Doc. No. 97].

For the following reasons, CIT's Motion for Summary Judgment [Doc. No. 82] is **DENIED**.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

On November 2, 2020, Noi Courville, the surviving spouse of Mark W. Courville ("Courville"), deceased, and Mark J. Courville and Ashley Trahan, surviving children of decedent, filed suit in this Court for a wrongful death and survival action against Citgo Petroleum Corp. ("Citgo") and CNH Industrial America, LLC ("CNH").[1] Plaintiffs later added CIT as a defendant, claiming that CIT is liable for damages under the Louisiana Products Liability Act ("LPLA").[2] CIT now moves for summary judgment via Rule 56 because, it asserts, there is no genuine dispute of material fact as to any alleged design defect in the cab enclosure it manufactured.[3]

---

[1] [Doc. No. 1].
[2] [Doc. No. 16].
[3] [Doc. No. 82].

Courville was killed in a workplace accident when he was struck by a forklift operated by an employee of Turner Industries Group, LLC ("Turner") on March 9, 2020.[4] The accident occurred while Courville was walking towards the break area, and the driver of the forklift did not see Courville.[5] Courville was also an employee of Turner at the time of the accident.[6] These events form the basis of the wrongful death actions brought by Plaintiffs.

CIT, an Indiana corporation, manufacturers and markets cab enclosures used on heavy machinery, such as the forklift involved in the present case.[7] Plaintiffs allege that the forklift had "an enclosed cab with doors constructed in a manner that reduces visibility for the operator, especially for visual awareness from the sides."[8] Plaintiffs allege that the cab was defective due to a blind spot it created for the forklift's driver, and thus, CIT is liable for placing the product into the stream of commerce and ultimately causing injury to Courville.[9]

CIT admits that it manufactured the cab enclosure on the rough terrain forklift operated by the Turner employee.[10] The cab enclosure is "an aftermarket part that is added at the requests of customers who wish to use the rough terrain forklift in all environments."[11] CIT purchased the original design and intellectual property for this specific cab from a rival manufacturer, Industrial Cab.[12] CIT claims that two priorities for Industrial Cab in creating this cab enclosure were (1) "structural integrity" and (2) "visibility to give the operator as much visibility as possible while still allowing for strength for the cab enclosure."[13] Because the cab is an aftermarket product, CIT

---

[4] [Doc. No. 16 at ¶23].
[5] [Id. at ¶18].
[6] [Id.].
[7] [Id. at ¶6].
[8] [Id. at ¶24–25].
[9] [Id. at ¶53, 55].
[10] [Doc. No. 82-1 at p.2].
[11] [Id.].
[12] [Id.].
[13] [Id. at p.3].

2

asserts that "it has to be designed to fit around the overhead ROPS (roll-over protection) structure of the case forklift and clamp to it."[14] CIT maintains that the cab is "designed to give the operator as much protection from the elements as possible," as well as "to make it as easy to install on a completed forklift as possible."[15]

With respect to the forklift used in Courville's accident, CIT states that Burlington Installation Corporation ("BIC"), a third-party installer, purchased the cab enclosure from CIT and "subsequently installed the enclosure on the subject forklift before shipping it to its customer."[16] Thus, CIT asserts that it "never had possession of the subject forklift either before or after the accident."[17]

In its Motion for Summary Judgment, CIT argues that all of Plaintiffs' claims under the LPLA should be dismissed because there is no genuine issue of material fact as to the presence of a design defect in the cab.[18] CIT summarizes Plaintiffs' allegations as (1) the "forklift had blind spots and inadequate operator visibility, especially for foreseeable uses in industrial setting where numerous pedestrians, workers and personnel would be present," and (2) "the forklift was designed, tested, manufactured, assembled, constructed, developed, labeled, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by CIT, in a defective and unreasonably dangerous condition to consumers and end-users."[19]

CIT argues that these allegations do not allow for liability under the LPLA because no evidence has been adduced of defective manufacturing, inadequate warnings, or non-conformity to express warnings by CIT.[20] Further, CIT argues that Plaintiffs can provide no safer alternative

---

[14] [Id.].
[15] [Id.].
[16] [Id.].
[17] [Id.].
[18] [Doc. No. 82].
[19] [Doc. No. 82-1 at p.3].
[20] [Id. at p.4].

design that still accomplishes the intended goals of the cab enclosure, nor can Plaintiffs "establish…any characteristic of [the] design that makes it unreasonably dangerous for its intended use."[21]

In response, Plaintiffs argue that they have produced evidence of a safer alternative design, the use of which would have prevented Courville's death and would have reduced the risk of harm without outweighing the product's utility.[22] Plaintiffs point to the report of their expert, Roelof deVries ("deVries"), in which deVries identified two safer alternative designs for the cab.[23] The two proposed designs would, according to Plaintiffs, "mitigate the unreasonably dangerous design's blind spot."[24] The designs propose to either (1) "locate the cab structure in line with the forklift's 'A' pillar, or (2) "utilize a wide-angle-lens camera to ensure [an unobstructed] forward and peripheral view for the driver."[25] Plaintiffs also request that the Court strike Mike Catey's affidavit, attached as Exhibit 2 to CIT's motion,[26] as untimely produced; Plaintiffs argue that CIT uses this affidavit as design criteria for the cab, yet CIT never disclosed this criteria before filing the motion.[27]

In reply, CIT argues that the two "solutions" offered by deVries, in addition to being untimely supplements, do not apply to CIT because CIT "was never in possession of the forklift either before or after the cab enclosure was shipped to [BIC]," and it is not CIT's duty to perform any installations, including those for additional safety features such as cameras.[28] As to Plaintiff's

---

[21] [Id. at p.5].
[22] [Doc. No. 92 at p.1].
[23] [Id. at p.2].
[24] [Id. at p.5].
[25] [Id.].
[26] [Doc. No. 82-4].
[27] [Doc. No. 92 at p.2–3].
[28] [Doc. No. 97 at p.2].

4

motion to strike the Catey affidavit, CIT points out that the same design criteria have been produced and discussed since CIT answered interrogatories in 2021.[29]

The issues are briefed, and the Court is prepared to issue a ruling.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248). However, in evaluating the evidence

---

[29] [Id. at p.7].

tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *See Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

### B. Analysis

#### 1. The LPLA

The LPLA, which serves as the basis of liability under Louisiana law for a suit against a manufacturer like CIT, states:

> B. A product is unreasonably dangerous if and only if:
>
> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
> (2) The product is unreasonably dangerous in design as provided by R.S. 9:2800.56;
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided by R.S. 9:2800.57; or
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided by R.S. 9:2800.58.
>
> C. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.55 must exist at the time the product left the control of its manufacturer. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.56 or R.S. 9:2800.57 must exist at the time the product left the control of its manufacture or result from a reasonably anticipated alteration or modification or the product.
>
> D. The claimant has the burden of proving the elements in Subsections A, B, and C of this Section.

La. R.S. 2800. Further, for a product to be considered unreasonably dangerous in design, the LPLA provides:

> A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
>
> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

La. R.S. 2800.56.

Pursuant to the above law, courts in Louisiana generally require proof of two elements to survive summary judgment on an LPLA claim:

> To survive a summary judgment on the claim of defective design, the plaintiff must present competent evidence that would enable a trier of fact to conclude at the time the product left the manufacturer's control 1) there existed an alternative design for the product that was capable of preventing the claimant's damage, and 2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting the alternative design and the adverse effect, if any, of the alternative design on the utility of the product. Louisiana law does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that injury occurred.

*Couturier v. Bard Peripheral Vascular, Inc.*, 548 F. Supp. 3d 596, 607 (E.D. La. 2021).

### 2. Existence of an Alternative Design

Plaintiffs argue that their expert deVries's "reports, testimony, and affidavit, along with the additional evidence cited," raise a fact issue regarding the presence of a design defect, thus precluding summary judgment.[30] CIT responds that deVries only provided a safer alternative design after he admitted in his deposition that he had none, and even if the Court considers the

---

[30] [Doc. No. 92 at p.3].

7

late-filed submission, the alternative design does not consider the loss of utility to the product.[31] Thus, CIT argues that, without evidence of a valid alternative design, Plaintiffs' claims under the LPLA fail as a matter of law.[32]

This Court agrees with Plaintiffs and finds that there is a genuine issue of material fact precluding summary judgment on the issue of a safer alternative design. The main dispute between the parties is the existence of an alternative design and whether such a design would be economically feasible to CIT as the manufacturer. This dispute is, in essence, a factual dispute that this Court cannot decide. Further, the Court must accept the evidence of Plaintiffs, as the nonmovant, as true. *See Anderson*, 477 U.S. at 255. The Court therefore cannot resolve the issue of the viability of an alternative design in this case, especially because it goes to the heart of Plaintiffs' claims against CIT. *See id.* at 248 (holding that a dispute is "genuine" if it would affect the outcome of a particular case). Thus, CIT has not shown that it is entitled to judgment as a matter of law as to Plaintiff's LPLA claims.

### III. CONCLUSION

For the reasons set forth herein, **IT IS ORDERED, ADJUDGED, AND DECREED** that CIT's Motion for Summary Judgment [Doc. No. 82] is hereby **DENIED**.

MONROE, LOUISIANA, this 6th day of April, 2023.

_____
Terry A. Doughty
United States District Judge

---

[31] [Doc. No. 97 at p.3].
[32] [Id.].