UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **NOI COURVILLE, ET AL.** | **CASE NO. 2:20-CV-01415** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CITGO PETROLEUM CORP., ET AL.** | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Pending before the Court is a Motion to Exclude Testimony of Plaintiffs' Expert Roelof DeVries and for Summary Judgment [Doc. No. 84] filed by Defendant, CNH Industrial America LLC ("CNH"). Plaintiffs, Noi Courville, Mark J. Courville, and Ashley Trahan ("Plaintiffs"), filed an opposition to the motion [Doc. No. 96], and CNH filed a reply [Doc. No. 104].

For the following reasons, CNH's Motion [Doc. No. 84] is **DENIED** in its entirety.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On November 2, 2020, Noi Courville, the surviving spouse of Mark W. Courville ("Courville"), deceased, and Mark J. Courville and Ashley Trahan, surviving children of decedent, filed suit in this Court for a wrongful death and survival action against Citgo Petroleum Corp. ("Citgo") and CNH Industrial America, LLC ("CNH").[1] Plaintiffs allege that CNH is liable for damages under the Louisiana Products Liability Act ("LPLA").[2] CNH now moves to exclude Plaintiffs' sole liability expert or, alternatively, for summary judgment because, it asserts, there is no genuine dispute of material fact as to any alleged design defect in the cab enclosure it manufactured.[3]

---

[1] [Doc. No. 1].
[2] [Doc. No. 16].
[3] [Doc. No. 84].

Courville was killed in a workplace accident when he was struck by a forklift operated by an employee of Turner Industries Group, LLC ("Turner") on March 9, 2020.[4] The accident occurred while Courville was walking towards the break area, and the driver of the forklift did not see Courville.[5] Courville was also an employee of Turner at the time of the accident.[6] These events form the basis of the wrongful death actions brought by Plaintiffs.

CNH manufactured the forklift used in the accident sometime in early 2014.[7] Subsequently, Burlington Installation Corp. installed a cab enclosure onto the forklift; the enclosed cab was manufactured by Contract Industrial Tooling, Inc. ("CIT").[8]

In its motion, CNH first argues that Plaintiff's sole liability expert, Roelof DeVries ("DeVries'), is not qualified to provide an opinion in this case, and his opinions are not reliable.[9] DeVries offers two general opinions, according to CNH: (1) "a 'blind spot' behind the A-pillar of the forklift's enclosed cab—which Plaintiffs contend represents a design defect—was a major contributing factor to the incident of Mr. Courville being struck by the forklift";[10] and (2) "CNH could and should have significantly improved the field of view of the forklift operator by reducing the width of the 'A' pillar and/or incorporating a camera and monitor system, either or both of which, he says, could have prevented the Incident."[11] CNH argues for the exclusion of both of these opinions.[12] Regardless of the outcome of the Motion to Exclude, however, CNH asserts that Plaintiffs' LPLA claims must be dismissed pursuant to Federal Rule of Civil Procedure 56 because

---

[4] [Doc. No. 16 at ¶23].
[5] [Id. at ¶18].
[6] [Id.].
[7] [Doc. No. 84-1 at ¶3].
[8] [Id.].
[9] [Doc. No. 84-2 at pp.8–9].
[10] [Id. at p.10] (internal quotation marks omitted).
[11] [Id.] (internal quotation marks omitted).
[12] [Id.].

Plaintiffs lack the "competent, admissible expert testimony to prove a design claim under the LPLA."[13]

In response, Plaintiffs argue DeVries is "well-qualified, his opinions [are] reliable, and his alternative designs [are] sufficient to raise genuine fact issues for trial."[14]

The issues are briefed, and the Court is prepared to issue a ruling.

## II.   LAW AND ANALYSIS

### A. Federal Rule of Evidence 702 and Daubert

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993). The *Daubert* holding provided an illustrative list of factors that courts may use when evaluating the reliability of expert testimony. *See id.* at 592–594. These factors include whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted

---

[13] [Id. at p.9].
[14] [Doc. No. 96 at p.2].

3

in the relevant scientific community. *See id.* at 593–594. "In short, expert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). Thus, the *Daubert* factors should be applied with flexibility and the question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138, 119 S. Ct. 1167, 1170 (1999); *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004).

"When expert testimony has been challenged, it is incumbent on the court to conduct a preliminary fact-finding to determine whether the expert is qualified to render the proffered opinions and whether the substance of the testimony is both reliable and relevant." *Drapela v. United States*, No. 1:08-CV-44-TH, 2009 WL 10679657, at *1 (E.D. Tex. 2009). Though the trial court must fulfill its role as gatekeeper in ensuring that all admitted expert testimony is both reliable and relevant, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *U.S. v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). Thus, "[t]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note (2000).

### B. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific

4

facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248). However, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *See Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

### C. Analysis

#### 1. Motion to Exclude DeVries's Testimony

CNH first argues that this Court should exclude the testimony of Plaintiff's expert DeVries because DeVries is unqualified and his opinions are unreliable.[15] This Court finds that DeVries satisfies the standards of Rule 702 and can opine in this matter.

---

[15] [Doc. No. 84-2 at p.10].

### a. DeVries's qualifications

With respect to expert qualifications, CNH argues that DeVries's opinions fall "within the realm of accident reconstruction," an area in which DeVries is not qualified according to CNH.[16] CNH points this Court's attention to the Fifth Circuit's opinion in *Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999), in which that court held that a mechanical engineer was not qualified in the field of accident reconstruction. Vital to the court's decision was the fact that the purported expert had "never taught accident reconstruction courses, never experimented or conducted studies in the field, and never published anything on the subject." *Id.* at 938. CNH argues that, just as in *Wilson*, DeVries is a mechanical engineer without specific training or prior course work in accident reconstruction. Therefore, DeVries's expertise in this field is "no greater than that of any other individual with a general scientific background." *Id.* Further, CNH states that DeVries's "entirely self-serving and unsubstantiated assertion that his experience renders him qualified to opine on the cause of this Incident is insufficient to satisfy the Plaintiffs' burden" here.[17]

In response, Plaintiffs argue that DeVries is an experienced mechanical engineer who has designed tractors and cab enclosures in the past.[18] Further, Plaintiffs assert that DeVries has "worked as a forensic engineer in more than 50 cases" and that he received accident reconstruction training while working for Lapina Associates.[19] In this vein, DeVries gave testimony in California regarding a blind spot in a Snowcat machine, which he opined was a contributor to an accident.[20] Further, Plaintiffs disagree with CNH that the specific field of tender for DeVries is accident reconstruction; rather, Plaintiffs assert that this is a design defect case, to which DeVries is

---

[16] [Id.].
[17] [Id. at p.11].
[18] [Doc. No. 96 at p.5].
[19] [Id.].
[20] [Id.].

perfectly suited to give an expert opinion.[21] Plaintiffs argue that DeVries's significant experience in designing cab enclosures and testing visibility in those enclosures makes him sufficiently qualified to opine in this matter.[22] Regardless, Plaintiffs assert that DeVries is also qualified in the area of accident reconstruction.[23]

This Court agrees with Plaintiffs that DeVries is a well-qualified mechanical engineer who can opine as to the alleged design defect in the cab enclosure and forklift. Plaintiffs have met their burden under Rule 702 of demonstrating that DeVries has the proper education, training, and experience to provide an opinion as to the design of the cab enclosure, as well as in the area of accident reconstruction. Thus, CNH's motion is denied as to DeVries's qualifications as an expert.

### b. Reliability of DeVries's opinions

CNH argues that, even if DeVries is qualified to give an opinion in this matter, his opinions are speculative, unreliable, and inadmissible.[24] CNH argues that the method by which DeVries reached his conclusions is "reverse-engineering" that serves only to justify the result DeVries intended to reach from the start.[25] CNH points to a Louisiana state court case, where an expert's opinion was excluded because the expert's "design criteria were not outlined, there were no engineering drawings produced, he did not establish any dimensions, and he had done no analysis or testing" of the proposed alternative designs. *Seither v. Winnebago Industries, Inc.*, 853 So. 2d 37, 40 (La. App. 4th Cir. 2003), *writ denied*, 867 So. 2d 704 (La. 2004). CNH asserts that, like the expert in *Seither*, DeVries has "presented merely a concept that was untested, unengineered, and not…more than mere speculation." *Id.* at 41. CNH directs this Court's attention to several other

---

[21] [Id.].
[22] [Id. at p.6].
[23] [Id.].
[24] [Doc. No. 84-2 at p.12].
[25] [Id. at p.13].

case examples where courts excluded an expert's testimony regarding safer alternative designs because the foundation for the opinion was considered unreliable.[26] Ultimately, CNH argues that DeVries's opinions must be excluded because, according to CNH:

> DeVries did not outline any proposed design criteria, he did not provide any engineering drawings of his proposed alternative designs, he provided no analysis or test results of the proposed alternative designs, offered no analysis of the economic feasibility of the proposed alternative designs, failed to cite to any scientific, engineering, or industry studies, failed to include any photographs or drawings of the proposed alternatives, and provided no discussion about how the proposed design alternatives could be integrated into the subject forklift.[27]

Plaintiffs respond that, despite CNH's contentions, DeVries is not the only individual in this matter who concluded a blind spot existed on the forklift.[28] Plaintiffs also contest CNH's assertion that DeVries "worked backward" to justify his conclusion; Plaintiffs argue that DeVries followed standard testing procedure, and his resulting opinions are reliable.[29] Further, Plaintiffs assert that DeVries did not need to have "design[ed], built, and tested a new cab enclosure and a camera and monitor system" to establish that alternative designs exist.[30] Plaintiffs point out that the proper method to challenge DeVries's conclusions is through cross-examination.[31]

This Court agrees with Plaintiffs that DeVries has proposed two alternative designs for the forklift/cab enclosure that, at a minimum, create a fact issue for trial. There is no valid reason to completely disregard DeVries's opinions as unreliable and speculative; rather, CNH may challenge DeVries's conclusions through cross-examination and competing testimony at trial. *See*

---

[26] [Id. at pp.14–16].
[27] [Id. at p.16].
[28] [Doc. No. 96 at p.7].
[29] [Id.].
[30] [Id. at p.9] (*citing Guidroz v. Crown Equip. Corp.*, No. 6:09-CV-01204, 2011 WL 6171134 (W.D. La. July 11, 2011).
[31] [Id. at p.10].

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). Thus, CNH's motion to exclude DeVries's testimony is denied in its entirety.

### 2. Motion for Summary Judgment

CNH alternatively argues that, even if DeVries's testimony is not excluded, CNH is entitled to judgment as a matter of law on Plaintiffs' LPLA claims.[32] CNH contends that the evidence used to support Plaintiff's claims is inadmissible, and even if it were admissible, DeVries's expert opinions "fall fatally short of establishing a design defect under the LPLA."[33]

Plaintiffs respond, and this Court agrees, that CNH's argument for summary judgment relies almost entirely on the exclusion of DeVries's testimony.[34] However, as discussed above, this Court has already held that DeVries's opinions are admissible here. Further, Plaintiffs argue that the evidence produced through DeVries's testimony is sufficient to establish a design defect.[35]

The LPLA, which serves as the basis of liability under Louisiana law for a suit against a manufacturer like CNH, states:

> B. A product is unreasonably dangerous if and only if:
>
> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
> (2) The product is unreasonably dangerous in design as provided by R.S. 9:2800.56;
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided by R.S. 9:2800.57; or
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided by R.S. 9:2800.58.
>
> C. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.55 must exist at the time the product left the control of its manufacturer. The characteristic of the product

---

[32] [Doc. No. 84-2 at p.23].
[33] [Id. at p.25].
[34] [Doc. No. 96 at p.10].
[35] [Id.].

> that renders it unreasonably dangerous under R.S. 9:2800.56 or R.S. 9:2800.57 must exist at the time the product left the control of its manufacture or result from a reasonably anticipated alteration or modification or the product.
>
> D. The claimant has the burden of proving the elements in Subsections A, B, and C of this Section.

Further, for a product to be considered unreasonably dangerous in design, the LPLA provides:

> A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

La. R.S. 2800.56. Pursuant to the above law, courts in Louisiana generally require proof of two elements to survive summary judgment on an LPLA claim:

> To survive a summary judgment on the claim of defective design, the plaintiff must present competent evidence that would enable a trier of fact to conclude at the time the product left the manufacturer's control 1) there existed an alternative design for the product that was capable of preventing the claimant's damage, and 2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting the alternative design and the adverse effect, if any, of the alternative design on the utility of the product. Louisiana law does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that injury occurred.

*Couturier v. Bard Peripheral Vascular, Inc.*, 548 F. Supp. 3d 596, 607 (E.D. La. 2021).

As this Court held in its recent ruling on Defendant CIT's Motion for Summary Judgment,[36] there is a genuine issue of material fact precluding summary judgment on the issue of a safer alternative design. Like in the dispute between CIT and Plaintiffs, CNH contests the viability and effectiveness of Plaintiffs' proposed alternative designs for the cab enclosure. This is, in essence, a factual dispute that the Court cannot decide. Further, the Court must accept the evidence of Plaintiffs, as the nonmovant, as true. *See Anderson*, 477 U.S. at 255. The Court therefore cannot resolve the issue of the viability of an alternative design in this case, especially because it goes to the heart of Plaintiffs' claims against CNH. *See id.* at 248 (holding that a dispute is "genuine" if it would affect the outcome of a particular case). Thus, CNH has not shown that it is entitled to judgment as a matter of law as to Plaintiff's LPLA claims.

### III. CONCLUSION

For the reasons set forth herein, **IT IS ORDERED, ADJUDGED, AND DECREED** that CNH's Motion to Exclude Testimony of Plaintiffs' Expert Roelof DeVries and for Summary Judgment [Doc. No. 84] is hereby **DENIED**.

MONROE, LOUISIANA, this 12th day of April, 2023.

Terry A. Doughty
United States District Judge

---

[36] [Doc Nos. 124 and 125].